## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **USAA CASUALTY INSURANCE COMPANY, a/s/o JOAN SONNEN,** | : | **CIVIL ACTION NO. 1:12-CV-1178** |
| | : | |
| | : | **(Chief Judge Conner)** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **METROPOLITAN EDISON COMPANY,** | : | |
| | : | |
| **Defendant/Third Party Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **SCHNEIDER ELECTRIC USA, INC. f/k/a SQUARE D COMPANY,** | : | |
| | : | |
| **Third Party Defendant.** | : | |

## MEMORANDUM

Plaintiff USAA Casualty Insurance Company ("USAA"), as subrogee of Joan Sonnen, filed the above-captioned action against defendant Metropolitan Edison Company ("Met-Ed"), alleging negligence and willful or wanton misconduct arising from an electrical fire in Ms. Sonnen's home. (Doc. 1). Met-Ed subsequently impleaded Schneider Electric USA, Inc. ("Schneider"), formerly known as Square D Company ("Square D"), as a third-party defendant pursuant to Federal Rule of Civil Procedure 14. (Doc. 48). Presently before the court are Schneider's motion *in limine* (Doc. 77) to exclude the testimony of Met-Ed's expert, Robert A. Simpson, and its motion for summary judgment (Doc. 61) against Met-Ed. For the reasons

that follow, the court will deny the motion *in limine* (Doc. 77) and grant in part and

deny in part the motion for summary judgment (Doc. 61).

## I.   <u>Factual Background & Procedural History</u>

### A.   **Factual Background**

On November 17, 2010, a fire occurred at the home of Joan Sonnen in

Manchester, Pennsylvania as a result of an electrical malfunction.  (Doc. 63 ¶ 3; Doc.

69 ¶ 3).  Ms. Sonnen has a property insurance policy with plaintiff USAA, a Texas

corporation licensed to do business in Pennsylvania.  (Doc. 62, Ex. C ¶¶ 1, 6).

Defendant and third-party plaintiff Met-Ed is a Pennsylvania corporation

that provides electricity to Ms. Sonnen's home via its 720 distribution line.  (<u>Id.</u> ¶¶ 2,

12).  Met-Ed services Ms. Sonnen's home through a Square D electrical panel

located in her basement.  (<u>Id.</u> ¶ 13).  On November 17, 2010, the breaker at Met-Ed's

Zionsview substation for the 720 distribution line opened at 12:57 p.m. and reclosed

seven seconds later.  (Doc. 62, Ex. L at 3).  Thereafter, an electrical fire ignited at

the main circuit breaker in the Square D electrical panel in Ms. Sonnen's basement.

(Doc. 62, Ex. D at 5, 10; Doc. 62, Ex. L at 2, 5; Doc. 63 ¶¶ 26, 29; Doc. 69 ¶¶ 26, 29).

This fire was initially reported to the Union Fire Department at approximately

5:40 p.m.  (Doc. 62, Ex. D at 8; Doc. 62, Ex. L at 1).

### B.   **Procedural History**

On June 20, 2012, USAA, as subrogee of Joan Sonnen, filed a complaint

(Doc. 1) against Met-Ed and thereafter filed an amended complaint (Doc. 10) on

August 1, 2012, alleging claims for negligence and willful or wanton misconduct

related to the electrical fire.  (Doc. 63 ¶¶ 1-2; Doc. 69 ¶¶ 1-2).  Met-Ed filed a motion to dismiss (Doc. 14) pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  On January 10, 2013, the court adopted the Report and Recommendation of Magistrate Judge Methvin (Doc. 23) and denied the motion to dismiss.  (Doc. 30).

On May 5, 2013, Met-Ed filed a third-party complaint against third-party defendant Schneider, a Delaware corporation with its principal place of business in Illinois, alleging strict liability (for a defective main circuit breaker) and negligence claims.  (Doc. 48; Doc. 62, Ex. C ¶¶ 4-6; Doc. 63 ¶ 5; Doc. 69 ¶ 5).  Schneider filed an answer on June 11, 2013 and included a cross-claim against Met-Ed for contribution or indemnification.  (Doc. 51; Doc. 63 ¶ 6; Doc. 69 ¶ 6).

C.    Expert Testimony

Upon the conclusion of discovery, USAA served Met-Ed with the expert report of Ronald J. Panunto, P.E., C.F.E.I., C.F.C. no later than November 4, 2013, and Met-Ed served Schneider with the expert reports of Robert A. Simpson on December 4, 2013.  (Doc. 63 ¶¶ 7-9; Doc. 69 ¶¶ 7-9).  The parties do not dispute that the ultimate cause of the fire was the failure of the Square D main circuit breaker.  (Doc. 62, Ex. D at 5, 10; Doc. 62, Ex. L at 2, 5).  However, the parties' experts disagree on the cause of such failure.  (Doc. 62, Exs. D, E, L).

In his expert report for USAA, Mr. Panunto opines that Met-Ed did not adequately maintain trees and tree branches along the 720 distribution line as required by Rule 218 of the National Electric Safety Code ("NESC") and the Pennsylvania Public Utility Commission ("PPUC").  (Doc. 62, Ex. L at 4).  As a

3

result of inadequate vegetation management, Met-Ed's customers, including Ms.

Sonnen, suffered repeated power outages and high-voltage transients, which in

turn caused accelerated wear and eventual failure of the main circuit breaker in Ms.

Sonnen's electrical panel.  (Id. at 5).

Mr. Panunto concludes that, on November 17, 2010, another power outage

and high-voltage transients as a result of vegetation contact caused the electrical

failure at the main circuit breaker in Ms. Sonnen's electrical panel.  (Id.)

Specifically, the high-voltage transients caused the main circuit breaker to flash

over, and electric arcing ignited the insulation on the electrical panel's wiring.  (Id.)

On December 19, 2013, Met-Ed took the deposition of Mr. Panunto, and Mr.

Panunto testified that he found no evidence of a defect in the Square D main circuit

breaker.  (Doc. 63 ¶¶ 22-23; Doc. 69 ¶¶ 22-23; Doc. 62, Ex. K, Panunto Dep. 58:12-

59:9, Dec. 19, 2013; Doc. 69, Ex. 4, Panunto Dep. 58:12-59:9).

On behalf of Met-Ed, Mr. Simpson prepared two reports in this case.  (Doc. 63

¶¶ 24, 27; Doc. 69 ¶¶ 24, 27; see Doc. 62, Exs. D, E).  In his primary report, Mr.

Simpson disputes the conclusions of Mr. Panunto and opines that Met-Ed properly

managed its electrical distribution system.  (Doc. 63 ¶ 25; Doc. 69 ¶¶ 25-26; see Doc.

62, Ex. D at 10).  According to Mr. Simpson, there is no evidence of improper

vegetation management or electric transients from incidental vegetation contact

sufficient to cause the electrical fire.  (Doc. 62, Ex. D at 6-9).  Mr. Simpson states

that Mr. Panunto failed to consider evidence that Ms. Sonnen's home was

unoccupied for a number of years.  (Id. at 5).  Ms. Sonnen's brother, Edwin

4

Clemens, testified that he maintained the vacant home and kept the temperature at 55 degrees Fahrenheit. (Id.) Mr. Clemens also testified that the basement often retained water from heavy rains. (Id. at 5-6). Mr. Simpson concluded that the cause of the electrical fire was "low temperatures and a steady diet of moisture in the form of rainwater and condensation over an extended period of time." (Id. at 9; Doc. 63 ¶ 26; Doc. 69 ¶ 26).

At the same time, Mr. Simpson provided an alternative opinion that the cause of the electrical fire was "a manufacturing defect or malfunction in the electrical panel." (Doc. 62, Ex. E; see also Doc. 62, Ex. D at 9). Mr. Simpson notes that he prepared the supplemental report "in the event that a verdict is rendered in favor of [USAA] against Met-Ed." (Doc. 62, Ex. E at 1; Doc. 63 ¶¶ 27-28; Doc. 69 ¶¶ 27-28). Upon a finding of negligence for inadequate vegetation management, Mr. Simpson states that the Square D main circuit breaker would not have failed but for a defect in the breaker causing a malfunction. (Doc. 62, Ex. E at 1).

Again, Mr. Simpson refutes Mr. Panunto's opinions that the cause of the fire was improper vegetation management or high-voltage electrical transients. (Id. at 5-6). Mr. Simpson nonetheless focuses on the effect of periodic electrical transients in the normal operation of a public utility electric distribution system. (Id. at 6). Mr. Simpson opines that the main circuit breaker should have been designed and manufactured to handle transients up to the industry standard of 600 volts. (Id.) Because the main circuit breaker failed under normal conditions, Mr. Simpson

concludes that the Square D main circuit breaker was defective in design or manufacture.  (Id. at 6-8; Doc. 63 ¶ 30; Doc. 69 ¶ 30).

Met-Ed and Schneider filed motions for summary judgment on January 13, 2014.  (Docs. 58, 61).  On July 16, 2014, the court denied Met-Ed's motion for summary judgment and related motion *in limine* to exclude the expert testimony of Mr. Panunto.  (Docs. 89, 90).  In connection with its motion to dismiss, Schneider similarly moves *in limine* to exclude the expert testimony of Mr. Simpson.  (Doc. 77).  Schneider argues that Met-Ed cannot meet its burden of proof as to its negligence and strict liability claims because Mr. Simpson's expert reports are not sufficiently reliable under Federal Rule of Evidence 702 to constitute admissible evidence.  (Doc. 78 at 5-7).  Thus, as a threshold issue, the court must determine whether Mr. Simpson's reports are admissible.  Thereafter, the court will address Schneider's motion for summary judgment.  The motions are fully briefed and ripe for disposition.

## II.   Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only when "there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a).  A factual dispute is material if it might affect the outcome of the action under applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "Such affirmative evidence—regardless of whether it is direct or circumstantial—must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance."  Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson, 477 U.S. at 250-57; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

"A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  FED. R. CIV. P. 56(c)(2).  When there is a proper challenge to the admissibility of evidence, such as a motion *in limine* to exclude expert testimony, the party offering the expert bears the burden of establishing the admissibility of such expert's testimony and report by a preponderance of the evidence.  See Burke v. TransAm Trucking, Inc., 617 F. Supp. 2d 327, 331 (M.D. Pa. 2009); see also *In re* Paoli R.R. Yard PCB Litig. ("Paoli II"), 35 F.3d 717, 744-46 (3d Cir. 1994).

Admissibility of expert testimony is a question of law governed by Federal Rule of Evidence 702. <u>See</u> <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 588-89 (1993). Trial courts must act as gatekeepers to "ensure that any and all scientific testimony or evidence admitted is . . . reliable." <u>Id.</u> at 589. Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Third Circuit has explained that Rule 702 sets forth three separate restrictions on the admission of expert testimony: qualification, reliability, and fit. <u>Schneider <i>ex rel.</i> Estate of Schneider v. Fried</u>, 320 F.3d 396, 404 (3d Cir. 2003). Rule 702 embraces a "liberal policy of admissibility," pursuant to which it is preferable to admit any evidence that may assist the trier of fact. <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237, 243 (3d Cir. 2008) (quoting <u>Kannankeril v. Terminix Int'l, Inc.</u>, 128 F.3d 802, 806 (3d Cir. 1997)).

## III.  <u>Discussion</u>

In the instant motions, Schneider raises two primary issues for the court's consideration. First, Schneider seeks to exclude the expert testimony of Mr. Simpson because neither of Mr. Simpson's reports is reliable under Rule 702. (Doc. 78 at 5-7). Second, Schneider argues that, because Mr. Simpson's opinions are inadmissible, Met-Ed is unable to adduce sufficient evidence that a Square D

product was defective.  (Doc. 62 at 7-13; <u>see also</u> Doc. 76 at 3-4).  In response, Met-Ed contends that direct evidence of a manufacturing defect is not required to bring a strict liability claim under the malfunction theory.  (Doc. 70 at 6-11).  Schneider asserts that Met-Ed cannot meet its burden of proof on the malfunction theory as a matter of law.  (Doc. 76 at 4-7).  The court will address these issues *seriatim*.

### A.     Motion *in limine*

In its motion *in limine*, Schneider contests only the reliability of Mr. Simpson's proposed expert testimony.[1]  (<u>See</u> Doc. 78).  Expert testimony is "reliable" when it is based upon sound methodology and technique.  <u>In re</u> Paoli II, 35 F.3d at 742.  The touchstone is whether the expert's methodology is "sufficiently reliable so that it will aid the jury in reaching accurate results."  <u>Id.</u> at 744 (internal quotation omitted).  Notably, "[t]he evidentiary requirement of reliability is lower than the merits standard of correctness."  <u>Id.</u>  "As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process—competing expert testimony and active cross-examination—rather than excluded from jurors' scrutiny for fear that they will not

---

[1] Upon consideration of Schneider's limited challenge to Mr. Simpson's expert testimony, the court will not address the other Rule 702 requirements. Moreover, the court will not hold a <u>Daubert</u> hearing as requested by Schneider. (<u>See</u> Doc. 78 at 7; Doc. 81 at 8).  The decision "to hold [a <u>Daubert</u> hearing] rests in the sound discretion of the district court" and, as noted by the Third Circuit, a <u>Daubert</u> hearing is not always required.  <u>Padillas v. Stork–Gamco, Inc.</u>, 186 F.3d 412, 418 (3d Cir. 1999).  There is a full record before the court on the issue of admissibility, including all expert reports and two complete sets of briefing.  The court finds no need for further evidence to determine the admissibility of Mr. Simpson's expert testimony.

grasp its complexities or satisfactorily weigh its inadequacies." <u>United States v.</u>

<u>Mitchell</u>, 365 F.3d 215, 244 (3d Cir. 2004) (quoting <u>Ruiz-Troche v. Pepsi Cola of P.R.</u>

<u>Bottling Co.</u>, 161 F.3d 77, 85 (1st Cir. 1998)); <u>Kannankeril</u>, 128 F.3d at 806

("Admissibility decisions focus on the expert's methods and reasoning; credibility

decisions arise after admissibility has been determined").

The Third Circuit has enumerated several factors to guide the court's

reliability inquiry:

> (1) whether a method consists of a testable hypothesis; (2) whether the
> method has been subject to peer review; (3) the known or potential rate
> of error; (4) the existence and maintenance of standards controlling the
> technique's operation; (5) whether the method is generally accepted; (6)
> the relationship of the technique to methods which have been established
> to be reliable; (7) the qualifications of the expert witness testifying based
> on the methodology; and (8) the non-judicial uses to which the method
> has been put.

<u>Pineda</u>, 520 F.3d at 248 (citing <u>In re</u> <u>Paoli II</u>, 35 F.3d at 742 n.8). This list of factors is

a "convenient starting point," but is "neither exhaustive nor applicable in every

case." <u>Kannankeril</u>, 128 F.3d at 806-07. Accordingly, the Rule 702 reliability

inquiry is a flexible one, and the factors considered must be applicable to the facts

of the case. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141 (1999).

Schneider challenges the reliability of Mr. Simpson's expert opinions for

three reasons. First, Schneider argues that Mr. Simpson reaches two distinct and

contradictory conclusions. (Doc. 78 at 6). In his main report, Mr. Simpson disputes

Mr. Panunto's opinions that inadequate vegetation management caused repeated

power outages and high-voltage electrical transients that damaged the electrical

equipment. (Doc. 62, Ex. D at 6-9). According to Mr. Simpson, low temperatures and moisture infiltration—resulting from Ms. Sonnen's poor maintenance of the equipment—caused degradation of the electrical panel's insulation. (Id. at 9). In his supplemental report, Mr. Simpson separately opines that, if the jury finds negligence due to vegetation contact, then the cause of the electrical fire was a defective Square D circuit breaker. (Doc. 62, Ex. E at 1). According to Schneider, these conclusions are wholly inconsistent with each other and would require the factfinder to speculate as to the cause of the electrical fire. (Doc. 78 at 6-7).

The court rejects Schneider's contention that Mr. Simpson's alternative opinions are plainly contradictory. Met-Ed may proffer evidence at trial that the environmental factors in Ms. Sonnen's basement contributed to the deterioration of the Square D electrical equipment. However, this evidence does not preclude evidence that Square D electrical equipment malfunctioned due to a manufacturing defect. If a jury believes vegetation contact produced electrical transients, Mr. Simpson states that such transients were within normal range and should not have caused the failure of the main circuit breaker. Any resulting failure was caused by a manufacturing defect. (See Doc. 80 at 7). The question of whether these opinions are credible falls squarely within the purview of the jury. Thus, Schneider's first argument goes to the weight of Mr. Simpson's expert testimony rather than its admissibility.

Second, Schneider contends that Mr. Simpson cannot support either conclusion by any test, methodology, or examination. (Doc. 78 at 6). The court

11

disagrees.  In both reports, Mr. Simpson lists each of the documents and deposition transcripts he relied upon in reaching his conclusions.  (Doc. 62, Ex. D at 2; <u>id.</u>, Ex. E at 2; Doc. 80 at 6).  He also reviewed reference books and standards regarding electrical utility construction and circuit failure modes.  (Doc. 62, Ex. D at 2; <u>id.</u>, Ex. E at 3; Doc. 80 at 6).  Lastly, Mr. Simpson inspected the remains of the main circuit breaker in Mr. Panunto's laboratory and visited the Zionsview substation, the 720 distribution line, and Ms. Sonnen's home.  (Doc. 62, Ex. D at 2; <u>id.</u>, Ex. E at 3; Doc. 80 at 6-7).  Based upon the evidence of record, his examination, and applicable electrical utility standards, Mr. Simpson eliminated other potential causes to arrive at his conclusions.  (Doc. 62, Ex. D at 8-9; <u>id.</u>, Ex. E at 6-7).  Therefore, the court finds substantial support for Mr. Simpson's methodology.

Finally, Schneider asserts that Mr. Simpson's opinion is fatally flawed because he failed to find any defect in the main circuit breaker.  (Doc. 78 at 6).  This argument is also unpersuasive.  As set forth in Section B.ii., Met-Ed may use circumstantial evidence of a malfunction to prove a manufacturing defect.  Utilizing the malfunction theory, Mr. Simpson need not identify any specific defect in the main circuit breaker.

The court concludes that Mr. Simpson's expert testimony is sufficiently reliable to be admissible under <u>Daubert</u> and Rule 702.  Any further concerns regarding the existence of two reports by Mr. Simpson may certainly be addressed during cross-examination in the context of trial.

### B.    Motion for Summary Judgment

Schneider's motion for summary judgment centers upon the argument that, without Mr. Simpson's expert testimony, Met-Ed lacks adequate evidence to establish both its negligence and strict liability claims.  (Doc. 62 at 9-13).  Given the court's conclusion that Mr. Simpson's expert testimony is admissible, the court must now assess whether Met-Ed proffers adequate evidence as a matter of law to preclude summary judgment on its negligence and strict liability claims.

### i.    *Negligence Claim*

Under Pennsylvania law, a plaintiff must demonstrate each of the following elements for a negligence claim: (1) a duty or obligation recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) the defendant's failure to conform to the required standard; (3) a causal connection between the defendant's breach and the plaintiff's injury; and (4) actual loss or damage to the plaintiff.  Thomas ex rel. Thomas v. Staples, Inc., No. 09-3771, __ F. Supp. 2d __, 2014 WL 882671, at *9 (E.D. Pa. Mar. 6, 2014) (citing Morena v. South Hills Health Sys., 462 A.2d 680, 684 n.5 (Pa. 1983)); Cavanagh v. Electrolux Home Prods., 904 F. Supp. 2d 426, 429 (E.D. Pa. 2012) (citing Atcovitz v. Gulph Mills Tennis Club, Inc., 812 A.2d 1218, 1222 (Pa. 2002)).  In a products liability case, the plaintiff must establish breach of duty and causation by showing that the injury was proximately caused by "a specific defect in the manufacture or design of a product." Cavanagh, 904 F. Supp. 2d at 429 (citing Brandon v. Ryder Truck Rental, Inc., 34

13

A.3d 104, 110 (Pa. Super. Ct. 2011)); see also MacDougall v. Ford Motor Co., 257 A.2d 676, 678 (Pa. Super. Ct. 1969).

In the instant action, Met-Ed fails to set forth any evidence of negligence on the part of Schneider.  (Doc. 76 at 3-4).  In his supplemental report, Mr. Simpson opines only that the electrical fire in Ms. Sonnen's home was "the result of a failure in the main circuit breaker in the Square D electrical panel."  (Doc. 62, Ex. E at 8).  Mr. Simpson does not identify any specific defect in the main circuit breaker.  See Cavanagh, 904 F. Supp. 2d at 431 (finding sufficient evidence of a manufacturing defect as the proximate cause of an electrical fire when expert witness identified the specific defective component, narrowed the potential cause to two manufacturing defects, and noted alternative manufacturing practices that would have prevented the fire); Nationwide Ins. Co. v. Sears, Roebuck and Co., No. 11-7866, 2013 WL 1389766, at *3 (E.D. Pa. Apr. 3, 2013) (denying summary judgment based upon expert's identification of three potential defects within control panel of appliance).

Even though Met-Ed need not prove a specific defect with absolute certainty, circumstantial evidence of a malfunction alone is insufficient to maintain a negligence claim against Schneider.  See Cavanagh, 904 F. Supp. 2d at 431; MacDougall, 257 A.2d at 678 ("Mere proof of a malfunction would not sustain the verdict for [plaintiffs].").  Negligence liability "hinges upon whether the accident could have been avoided by the exercise of reasonable care." MacDougall, 257 A.2d at 680.  Without evidence of a specific defect, the court must grant Schneider's

14

motion for summary judgment for failure to establish breach of duty or proximate

causation for a negligence claim.

### ii.   *Strict Liability Claim*

To prevail on a strict liability claim, a plaintiff must prove that (1) the product

was defective; (2) the defect was the proximate cause of the plaintiff's injury; and (3)

the defect existed at the time the product left the manufacturer's control.  Barnish

v. KWI Bldg. Co., 980 A.2d 535, 541 (Pa. 2009); Dansak v. Cameron Coca-Cola

Bottling Co., 703 A.2d 489 (Pa. Super. Ct. 1997).  When a product is destroyed or

otherwise unavailable, the plaintiff may prove the existence of a manufacturing

defect by circumstantial evidence of a malfunction.  Barnish, 980 A.2d at 541; see

also Liberty Mut. Fire Ins. Co. v. Sharp Elecs. Corp., No. 08-cv-1678, 2011 WL

2632880, at *3 (M.D. Pa. 2011).  Under the malfunction theory, the plaintiff must

produce (1) evidence of the occurrence of a malfunction, (2) evidence eliminating

abnormal use, and (3) evidence eliminating reasonable secondary causes for the

malfunction.  Walters v. Gen. Motors Corp., 209 F. Supp. 2d 481, 486-87 (W.D. Pa.

2002); see also Barnish, 980 A.2d at 541.  Such evidence demonstrates that the

alleged defect caused the injury and that the defect existed when it left the

manufacturer's control.  Barnish, 980 A.2d at 542.

Reliance upon the malfunction theory, however, does not relieve a plaintiff

from the burden of showing a genuine issue of material fact to survive summary

judgment.  Id. at 546-47.  Similar to the doctrine of *res ipsa loquitor*, the malfunction

theory merely allows the plaintiff to demonstrate a manufacturing defect through

circumstantial evidence rather than direct evidence.  Id.; Liberty Mutual, 2011 WL 2632880, at *3.

Turning to the first element of the malfunction theory, the parties agree that the main circuit breaker suffered a failure and ultimately caused the electrical fire. Second, Met-Ed presents evidence from Mr. Simpson that, if the jury finds vegetation contact leading to electrical transients, the main circuit breaker failed in its normal use.  Mr. Simpson stated that the main circuit breaker should have been designed for electrical transients up to 600 volts to comply with industry standards. (Doc. 62, Ex. E at 6).  Incidental vegetation contact typically would not produce electrical transients beyond 600 volts.  (Id.)

Schneider contends, however, that Met-Ed cannot satisfy the third requirement of the malfunction theory.  (Doc. 76 at 4-7).  In particular, Met-Ed failed to present evidence eliminating reasonable alternative causes for the electrical fire by virtue of its reliance on Mr. Simpson's two different conclusions. (Id.)

Generally, the plaintiff bears the burden of presenting "a case-in-chief free of secondary causes."  Rogers v. Johnson & Johnson Prods., Inc., 565 A.2d 751, 755 (Pa. 1989).  The plaintiff need not negate every theoretically conceivable secondary cause for the malfunction.  Varner v. MHS, Ltd., No. 3:11-2138, __ F. Supp. 2d __, 2014 WL 888501, at *7 (M.D. Pa. Mar. 6, 2014).  However, the plaintiff fails to establish a *prima facie* case when, based upon plaintiff's own proof, more than one cause could account for the malfunction.  Dansak, 703 A.2d at 497; see also Barnish,

980 A.2d at 542 ("[I]f the plaintiff's theory of the case includes another cause for the malfunction such as improper maintenance or substantial wear and tear from regular use, a reasonable jury could not conclude that the product was defective at the time of delivery.").

Here, Met-Ed's case-in-chief relies upon Mr. Simpson's expert testimony, which contains several conclusions regarding the cause of the electrical fire. (Doc. 62, Exs. D, E). Viewing the evidence in the light most favorable to Met-Ed, the court finds that Mr. Simpson's conclusions are not in fatal conflict. Mr. Simpson refutes Mr. Panunto's opinions that vegetation contact caused repeated power outages and high-voltage electrical transients that degraded Ms. Sonnen's electrical equipment. (Doc. 62, Ex. D at 6-10). After eliminating electrical transients as a potential cause, Mr. Simpson opines that Ms. Sonnen's poor maintenance in the form of low temperature and moisture accumulation degraded the insulation in the electrical panel. (Id. at 5-6, 9). Thus, Met-Ed primarily denies its own negligence and focuses on Ms. Sonnen's negligence.

Met-Ed invokes the malfunction theory only upon a finding of negligence by the jury. (Doc. 62, Ex. E at 1). If the jury concludes that vegetation contact in fact created electrical transients, then the ultimate cause of the electrical fire was a defect in the main circuit breaker. (Id.) Under normal conditions, including incidental vegetation contact, the main circuit breaker should have been able to handle electrical transients up to 600 volts in accordance with industry standards. (Id. at 6). If the need for the alternative scenario arises, Met-Ed will bear the

17

burden of persuading the jury that there were no reasonable independent causes for the electrical fire, including excessive vegetation contact and environmental factors.  Upon a review of the existing record, the court finds that Met-Ed has set forth sufficient evidence under the malfunction theory to proceed to trial on its strict liability claim.

**IV.**     **Conclusion**

For the foregoing reasons, the court will deny Schneider's motion *in limine* (Doc. 77) and grant in part and deny in part the motion for summary judgment (Doc. 61).

An appropriate order will issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        August 12, 2014